Armando Dávila Rodríguez, Plaintiff and Appellant, v. Porto Rico Railway, Light & Power Company, Defendant and Appellee.

No. 5582. Argued April 19, 1933.—Decided April 28, 1933.

**924**

*Armando A. Miranda* for appellant. *Henri Brown, C. Ruiz Nazario, G. González,* and *G. Benítez Gautier* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On September 7, 1928, Armando Dávila Rodríguez brought, in the District Court of San Juan, an action against the P. R. Ry. Lt. & P. Co., to recover damages* amounting to $50,000.

He alleged, in brief, that he is a minor judicially emancipated, the only son and heir of Julián Dávila, and that the latter was killed instantaneously on April 25, 1910, on Insular Highway No. 3, as he was walking toward his home in the ward of Canovanillas of the Municipality of Loíza, when a live electric wire from one of the defendant's installations broke and fell on him through the negligence of said defendant.

After the defendant was summoned, he demurred to the complaint and answered it, setting up, among others, the defense of *res judicata*, as follows:

"A. That the present suit and the cause of action set up in the same is *res judicata*, since the controversy arising here between the same parties on the same facts and for the same cause of action, was the issue in civil suit No. 4598, tried in the District Court of the Judicial District of San Juan, Second Division, and decided against the plaintiff and in favor of the defendant, according to the judgment of August 13, 1912, from which an appeal was taken to the Hon. Supreme Court of Puerto Rico by the plaintiff herein, and which was affirmed by said Supreme Court in its decision of June 4, 1913, reported in volume 19 P.R.R. 613, by which decision the question in litigation between the same parties as in this case, and for the same cause of action, was finally decided in favor of the present defendant."

The case being set for trial, the parties stipulated that only the evidence relating to the defense of *res judicata* should be presented, postponing the offering of other evidence in the event that said defense should be overruled. And the court approved the stipulation.

It was admitted that the mother of the plaintiff, Armando Dávila Rodríguez, was Francisca Rodríguez, said Armando appearing in the Civil Registry as the recognized natural son of Francisca. And it was proved that in a certain action of filiation, the plaintiff was declared to be the natural son of Julián Dávila.

The amended complaint in an action for damages filed in the District Court of San Juan on March 28, 1911, which

formed the basis of civil action No. 4598, brought by *"Armando Dávila represented by his mother with patria potestas, Francisca Rodríguez* v. *The Porto Rico Power & Light Co.,"* was introduced in evidence.

In said complaint damages amounting to $25,000 were claimed for the death of Julián Dávila, father of the minor Armando, which occurred on April 25, 1910, on public highway No. 3, and was caused by the negligence of the defendant when a live electric wire from one of the latter's installations broke and fell on him.

The complaint begins as follows:

"Comes now before this Hon. Court, Armando Dávila, a minor, herein represented by his mother with *patria potestas,* Francisca Rodríguez, through his undersigned attorney, and files this complaint for damages against the Porto Rico Power & Light Company, and for a cause of action shows the following facts;"

And concludes thus:

"Wherefore, the plaintiff prays that this Hon. Court enter judgment according to law adjudging the defendant company to pay to the minor, Armando Dávila, the sum of $25,000 as damages, with costs, expenses and attorneys' fees."

There were also introduced the answer to said complaint, in which some facts were admitted and others denied, and it was alleged that if the death of Julián Dávila was caused by contact with the defendant's wires, it was due to his own and exclusive negligence; the reasoned decision of the court —which in effect constitutes an opinion—in which the district judge studies the facts and the law involved in the litigation; and the judgment entered which, as far as it is pertinent, says:

"On August 13, 1912, this case, in its turn, was called for trial in open court, and both parties appeared through their respective counsel, stating that they were ready for trial. Whereupon they read their pleadings, introduced their evidence in proper form, and finally submitted the case on briefs, which they timely filed.

"And the court, taking said briefs and evidence into consideration, renders judgment for the defendant, without special imposition of costs.

"The clerk will issue the corresponding order of execution."

The opinion and the judgment of the Supreme Court of Puerto Rico of June 4, 1913, 19 P.R.R. 613, confirming the judgment of the district court transcribed here, were likewise introduced in evidence.

On this evidence the trial court, on March 27, 1930, sustained the defense of *res judicata*, and accordingly it rendered judgment for the defendant. From this judgment the present appeal was taken, and in the brief seven errors, which may be reduced to five, are assigned.

The first error assigned is that the plea of *res judicata* does not set up facts sufficient to constitute a defense.

The question was raised for the first time in the trial court after the close of defendant's evidence, and in reference thereto the district court, in its opinion and statement of the case, said:

"The plaintiff offered no objection to the plea of *res judicata*, either by demurrer or in any other manner, before the judgment which refers to said plea was offered as evidence, nor did he present any evidence whatsoever to overcome the presumption arising from said judgment that the District Court of San Juan, First Section, acted with jurisdiction and proceeded according to law. If the plea of *res judicata* had any defects they were cured by the evidence. *F. Gavilán & Co.* v. *Garriga & Hijos,* 38 P.R.R. 372; *Portela* v. *Saldaña,* 39 P.R.R. 490; *Aboy Vidal & Co.* v. *Garófalo et al.,* 39 P.R.R. 678; and *D'Azizi* v. *Alcaraz,* decided January 31, 1930, and under these circumstances, once the judgment had been presented, it was for the plaintiff to prove that the court lacked jurisdiction. *Candal* v. *Pierluissi et al.,* 28 P.R.R. 564, *González* v. *González et al.* 35 P.R.R. 642."

We agree to the above. The nonexistence of the error assigned will be made clearer when we consider jointly the second, third, and seventh assignments, which contain the decisive question of the litigation.

By the fourth, fifth, and sixth assignments it is maintained that the court erred in holding that the Assistant Secretary of the Supreme Court had authority to authenticate documents filed with the Secretary of said Court; in holding that judicial authorization was not necessary for a mother with *patria potestas* to file a suit as the representative of her minor son; and in not holding that the judgment rendered in civil suit No. 4598 was null and void.

The Assistant Secretary of the Supreme Court, Mr. Marrero, appeared before the district court taking with him the record of civil case No. 926, entitled "Francisca Rodríguez, as the mother with *patria potestas* of *Armando Dávila*, Plaintiff and Appellant, v. *Porto Rico Railway, Light & Power Co.*, Defendant and Appellee; Appeal from the District Court of San Juan, First Division." He was shown a copy of the opinion and the judgment of the Supreme Court which appeared attached to suit No. 4598 of the district court, and he definitely recognized them as exact copies of their respective originals. The plaintiff said nothing then. It was after the cross-examination had ended that the following occurred:

"Plaintiff: As to Mr. González' offer, we object on the ground that the document have not been properly identified.

"Judge: Since it has been admitted that the document attached to the record is a true and exact copy of the documents which are to be found in the Supreme Court of Puerto Rico, the Court admits it (Def. Ex. 8).

"Plaintiff: Exception; because we believe that the document is not properly identified or certified."

The practice in this Supreme Court is to communicate to the proper district court, by means of certified copies, the judgment rendered in the appeal and the opinion on which said judgment is based, thus complying with the provisions of section 306 of the Code of Civil Procedure, as amended in 1906 (Comp. Stat. 1911, p. 904), which says:

"When the judgment, order or decree of the court below shall be reversed, the court shall proceed to render such judgment, order

or decree as the court below should have rendered, except when it is necessary that some matters of facts be ascertained, or the damage to be assessed or the matter to be decreed is uncertain, in any of which cases the cause shall be remanded for a new trial in the court below.

"The judgments of the Supreme Court rendered on appeal, shall be certified to the court below for observance. When the appeal is from the final judgment, the secretary of the court below must attach the certificate to the judgment roll and enter a minute of the judgment of the Supreme Court on the docket against the original entry. When the appeal is from an order, the secretary must enter at length, on the records of the court, the certificate received, and enter against the entry of the order appealed from a reference to the certificate, with a brief statement that such order has been approved, reversed or modified by the Supreme Court on appeal."

If that practice is followed, and if the clerks of the district courts comply with the provisions of section 306 of the Code of Civil Procedure (Comp. Stat. 1911, sec. 904) in respect to judgments rendered on appeal, nothing more is necessary for the action of the Supreme Court to be duly accredited in the district court, and for the record of the latter court to speak for itself on this particular.

Whether or not the copies sent to the trial court in this case were certified is not clear. Perhaps they were not, and if such was the case, we believe that the testimony of the Assistant Secretary was supplemental in this respect. The capacity in which said official appeared at the defendant's request was admitted by the plaintiff. It was shown that Mr. Marrero was, as he is, the Assistant Secretary of the Supreme Court; that at that time he had with him the record of the case in question, which had been filed with the Secretary of said Court, and was acting in the place of the Secretary, in whose custody the said record was to be found, in accordance with the law and the rules and regulations of the Court.

The circumstance that the plaintiff and appellant was designated in the appeal as "Francisca Rodríguez, as mother with *patria potestas* of Armando Dávila" when the suit was

begun by "Armando Dávila, represented by his mother with *patria potestas* over him, Francisca Rodríguez," does not destroy the identity fully established by the facts on which the complaint is based, and the analysis of which set out in the opinion of this Court, together with the evidence and the law, served as a basis for the judgment rendered.

By the fifth assignment it is urged that for the mother to have validly filed the action in 1911, she should have previously sought and obtained judicial authorization. We do not agree. In the case of *Cibes et al.* v. *Santos et al.*, 22 P.R.R. 208, this Court, speaking through Mr. Chief Justice Hernández, said:

"The minor children of Herencia, whether absent or present, had a legal representative in the person of their mother, hence judicial administration of the estate of the deceased was not necessary.

"The lack of capacity to sue having been alleged without stating facts in support thereof, if it had to be deduced from the complaint itself, such lack of capacity might be understood to be because the mother could not represent her minor children. Let us consider the demurrer from that standpoint. In looking for some statute to sustain the same we find section 56 of the Code of Civil Procedure which reads as follows:

" 'Section 56.—When an infant or an insane or incompetent person is a party, he must appear either by his general guardian or by a guardian *ad litem* appointed by the court in which the action is pending, in each case, or by a judge thereof.'

"That section does not repeal section 223 of the Civil Code which provides, among other things, that the father and the mother have, with respect to their children not emancipated, the duty of representing them in the exercise of all actions which may redound to their benefit, and, harmonizing the provisions of the two codes, we may reach the conclusion that by reason of *patria potestas* the father or the mother may represent their minor children and that only when there are conflicting interests the children may be represented by their general guardian or by a guardian *ad litem* appointed by the court.

"In the present case there are no conflicting interests between the widow and her children, the plaintiffs. The Supreme Court of Spain in its judgment of June 17, 1903, held that article 165 of the

Spanish Civil Code (section 230 of the code of Porto Rico) is not applicable to an action of debt when a mother is defendant in her own name and in representation of her minor children, because in that case the interests are common and not conflicting. Civil Jurisprudence, volume 95, page 951. We adopt that doctrine and find it applicable to the case at bar.

"The demurrer on the ground of lack of legal capacity to sue was not pleaded in proper form and on that ground it could have been overruled; but even considering it on its merits, as we have, it is bad."

It is the guardian who, according to the provisions of section 212 of the Civil Code, 1930 ed., needs authorization by the court. The law makes no requirement when it is the case of the father or the mother acting in the exercise of the rights and obligations which the *patria potestas* assigns to them. Section 159 of the Civil Code, 1930 ed., which the appellant invokes, is not applicable. It refers to a different situation. It does not support the appellant's contention. On the contrary it impairs said contention because it shows that when the lawmaker meant to restrict the exercise of the *patria potestas* and to require the previous intervention of the courts of justice, it did so in express terms.

As a sixth assignment the appellant maintains that the district court erred in not holding that the judgment rendered in 1912, in suit No. 4598, was void because it did not comply with the provisions of section 227 of the Code of Civil Procedure as in force at that time (Comp. Stat. 1911, p. 847).

Aside from the fact that we have decided, when judgments are attacked, either directly or collaterally, that a failure to comply with said section does not render the judgment void, the record shows that here the trial judge complied essentially with all of the statutory requirements. In his so-called "decision" which precedes the judgment, said judge made and filed in effect the "brief statement in the case setting out the facts as found by him and giving the reasons for his decision," to which the law refers.

Let us see now whether or not the plea of *res judicata* lies, and thus dispose of errors numbered 2, 3, and 7, which are the only ones that remain to be considered.

In order that the presumption of *res judicata* may arise, the law requires (section 1204 of the Civil Code, 1930 ed.) "that between the case decided by the sentence and that in which the same is invoked, there must be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such."

The appellant begins by maintaining that the former judgment was not properly proved. He cites ample jurisprudence dealing with the point. From said jurisprudence we will only transcribe the following, as summarized in Corpus Juris, since we think that it is sufficient, when applied to the facts of the case herein, to decide the question raised:

"One who interposes a plea of res judicata must establish it by a fair preponderance of the evidence. To prove the existence and contents of a judgment the record thereof or an authenticated copy is necessary and sufficient to produce the judgment entry alone, but it must be accompanied by the entire record, when it is in existence, including the judgment roll, unless, as may be the case with decrees in chancery, the judgment of the court contains such recitals as will exhibit fully not only the fact of the judgment, but also the whole scope and extent of the estoppel created by it." 34 C. J. 1069.

Here the party who set up the plea of *res judicata* offered in evidence, among other parts of the record of suit No. 4598, the amended complaint filed on March 29, 1911. Thereupon the opposing party said: "We accept it as the original presented in the District Court"; and the judge admitted it. The answer was immediately introduced, and the plaintiff said, "It is admitted"; whereupon the court admitted it. Then the defendant said: "From said record 4598, we offer in evidence the decision of said court, rendered on August 12, 1912, by the Judge of the District Court, First Section, Félix Córdova Dávila, and the judgment of the 13th of the same month and year." And the plaintiff said: "We object

because that judgment was not against anyone." The incident continuing as follows: "Defendant: I am presenting the original document. It is in volume 7. Let the clerk bring it.—Plaintiff: We accept that it is an authentic copy of the judgment.—Judge: Then the fact of the judgment is admitted as true. Its effect is what is under discussion. —Plaintiff: Yes, sir.—Judge: It is admitted for the value it may have. (Def. Ex. 6 and 7.)—Plaintiff: Exception."

In Puerto Rico there is an act in force which determines the method of compiling all papers in civil suits. It was passed on February 19, 1906 (Comp. Stat. 1911, p. 317). All of the documents referring to the case should be compiled and carefully bound in the order in which they have been filed, and shall bear on the cover the name of the court, the number of the suit, the names of the litigants and of their attorneys, the title or indication of the subject-matter of the suit, the date of filing, the date of hearing, and the date on which the final judgment was rendered. Not only are the pleadings and original documents attached to the record, but it is the duty of the clerk of the court to record in it, free of charge to the parties, copies of the entries in the minute book and of every decision or judgment that is rendered during the course of the trial.

That being so, it really would have been extremely easy for the defendant to introduce the entire record in evidence, thus following the law and avoiding future difficulties.

We believe, however, that what was presented is sufficient to conclude beyond all doubt that the complaint and the answer introduced—which, by being presented, carried the entire record to the court, inasmuch as they could not be detached and were not presented by means of copies—show everything that was submitted to the decision of the district court. And since the so-called "decision" and the judgment were introduced just as they appeared in the book in which they were originally filed (section 231 of the Code of Civil Procedure), and since the "decision" is ample and detailed, and recounts

the trial and the offering of the evidence, which is explained, analyzed and weighed by the court, there is sufficient ground in the record of this new suit to conclude that the former judgment was rendered in deciding on the merits a specific judicial controversy of which the facts and basis are shown in the record.

Comparing the present suit with the former one, we think that there exists between them the perfect identity that the law requires in order to conclude that the question at issue in the action herein was definitely adjudicated and decided in the former action against the plaintiff and in favor of the defendant.

There is perfect identity between the *things.* Both complaints, that of 1911 and that of 1928, are based on the fact of the death of Julián Dávila which occurred on Insular Highway No. 3, on April 25, 1910, said death being the same one that the District Court of San Juan took into consideration to render its judgment of August 13, 1912, affirmed by that of this Supreme Court on June 4, 1913.

There is perfect identity between the *causes of action.* In the former suit, as in the present one, the same claim for damages is involved, and both actions have as a basis that the death of Julián Dávila, father of Armando, was due to the negligence of the same defendant in both suits, in not keeping properly its electrical installations.

And there is perfect identity between the persons, because in both suits the plaintiff is Armando Dávila Rodríguez, and the defendant is the electric company involved.

The appellant himself accepts this in part. It is the perfect identity of *capacity* of the litigants as such which said appellant maintains to be non-existent, invoking in his favor only the holding of this Supreme Court in the case of *Irizarri* v. *Díaz,* 35 P.R.R. 132, which (quoting from the syllabus) was as follows:

"When an action that accrues to the conjugal partnership is brought personally by the wife joined by her husband the judg-

ment rendered therein can not be pleaded as *res judicata* in a subsequent action based on the same facts brought by the husband as the representative of the conjugal partnership."

In the body of the opinion it was said:

"At the trial the prosecution to judgment of the other action was shown, but the plaintiff contends, and we believe he is right, that as that action was brought by Providencia Morales who had no right to bring it because the action pertained to the conjugal partnership, the judgment therein rendered can not be pleaded in bar of this action. That the action pertains to the conjugal partnership was held in the case of *Vázquez* v. *Valdés et al.*, 28 P.R.R. 431, and that decision has been ratified in that particular in the recent case of *Vázquez* v. *Porto Rico Ry., Light & Power Co.*, *ante,* page 59.

"Section 1219 of the Revised Civil Code provides that 'In order that the presumption of the *res adjudicata* may be valid in another suit, it is necessary that, between the case decided by the sentence (*sic*) and that in which the same in invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.' Case No. 9254 decided by the judgment of December 13, 1922, was in fact based on the same facts as this case, but it was brought by Providencia Morales personally, while in this case Providencia Morales appears as a member of the conjugal partnership composed of herself and her husband. The fact that she was joined by her husband in the first case does not change the situation. Hence the *perfect identity which the law requires between the litigants in the two cases* does not exist and therefore the plea of *res judicata* is of no avail."

As may be seen, the cited case is distinct. Here the present complaint was filed by Armando Dávila Rodríguez for himself, as the only son and heir of Julián Dávila, and the former complaint was filed by the same Armando Dávila who, as he was then an unemancipated minor whose father had died, appeared represented by his mother with *patria potestas* over him, Francisca Rodríguez, the suit being for the exclusive benefit of the minor and the rights of the minor being definitely decided in said suit, in the absence of fraud or any other defect that might invalidate it, which the new suit does

**936**

not even allege to have existed. *Corker* v. *Jones,* 110 U.S. 317, 320.

Since the identity between the things, causes, persons of the litigants, and their capacity as such, is perfect, the district court did not err in rendering its judgment of May 27, 1930. The work of constituted justice must be deemed completed in this controversy since 1913. The peace of society demands it, and the law so provides.

The judgment appealed from must be affirmed.